E-FILED
Thursday, 30 March, 2023  03:53:10 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cr-20077-SLD |
| | ) | |
| MARSHON SIMON, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

<u>ORDER</u>

Before the Court are Defendant-Petitioner Marshon Simon's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 60; counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 73; Motion for Leave to File Supplement to 2255 Petition, ECF No. 82; First Supplement to Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Supplemental 2255 Motion"), ECF No. 83; *pro se* Motion to Show Cause, ECF No. 92; motion for leave to file second supplemental motion, ECF No. 95; motion to proceed *pro se*, ECF No. 97; *pro se* Motion to Show Cause, ECF No. 99, and counseled motion for a status conference, ECF No. 100.  For the reasons that follow, the Pro Se 2255 Motion is DENIED; the Counseled 2255 Motion is DENIED; the motion for leave to file a first supplemental motion is MOOT; the Supplemental 2255 Motion is DENIED IN PART and set for an evidentiary hearing in part; the motions to show cause, to proceed *pro se*, and for a status conference, are MOOT; and the motion for leave to file a second supplemental motion is WITHDRAWN.

## BACKGROUND

I.      **Pre-Plea Proceedings & Plea**

On November 3, 2016, a grand jury returned an indictment charging Simon with possession of a firearm after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year (in other words, being a felon in possession of a firearm).  Indictment 1, ECF No. 1.  Assistant Federal Public Defender Elisabeth Pollock was appointed to represent him.  *See* Nov. 16, 2016 Min. Entry.

Simon filed a motion requesting that United States District Judge Colin Bruce, who was then presiding over the case, recuse himself.  Mot. Recuse, ECF No. 10.  The basis for the motion was that Simon had a prior conviction in the Central District of Illinois that would be used to enhance his sentence in the current case and that the prior conviction was obtained under the supervision of Judge Bruce when he worked for the United States Attorney's Office for the Central District of Illinois ("USAO").  *Id.* at 1–2.  Judge Bruce denied the motion by text order, explaining that he could not "remember any participation in past prosecutions" of Simon and that even if he had participated in past prosecutions of Simon, he had "not had any participation in the current prosecution which consist[ed] of new charges, wholly unrelated to those brought against [Simon] in the past."  Dec. 6, 2016 Text Order.

Simon then filed a motion to suppress "all evidence seized and statements made during and following a traffic stop that occurred on August 21, 2016," arguing that law enforcement officers violated his Fourth Amendment rights by stopping him without probable cause or, alternatively, by improperly prolonging the stop.  Mot. Suppress ¶¶ 2–4, ECF No. 12.  He also requested "a probable cause hearing . . . to assess the reliability of K-9 Officer Rex's performance and the qualifications of the Macon County Sheriff's K-9 Academy."  *Id.* ¶ 5.

2

Judge Bruce held a hearing on the motion on July 10, 2017, July 12, 2017, and September 26, 2017. *See* July 10, 2017 Min. Entry; July 12, 2017 Min. Entry; Sept. 26, 2017 Min. Entry. He then denied the motion by written order on November 6, 2017. *See* Nov. 6, 2017 Order, ECF No. 21. The facts relevant to the motion are simple: Simon's car was stopped by police on August 21, 2016 for allegedly failing to signal his turn more than 100 feet from an intersection. *Id.* at 1. Decatur Police Department "bike officers witnessed the infraction and radioed that information to a squad car." *Id.* Officers in the squad car pulled Simon over. *Id.* A canine unit was called to the scene. *Id.* The dog alerted on Simon's car, so the officers conducted a search. *See id.* They recovered a handgun but no drugs. *Id.* Judge Bruce found the officers who testified at the hearing credible, *id.* at 11, that there was probable cause for the stop, *id.* at 13, that the "stop was not improperly prolonged to allow for the dog sniff to occur," *id.* at 17, and that the dog's sniff was reliable, *see id.* at 25.

Judge Bruce later denied Simon's motions for leave to supplement the record and for leave to file a motion to reconsider. *See* Jan. 29, 2018 Order, ECF No. 25. Simon sought to supplement the record to include a video taken at night at the scene of the traffic stop and other warnings and citations issued by the police officers to demonstrate their handwriting. *See id.* at 1–4. Judge Bruce provided a few reasons for denying the motion. First, he explained that there was no reason the evidence could not have been presented while the hearing was still ongoing and before he ruled on the motion. *Id.* at 1–2. Second, he found that reopening the evidence and allowing a motion to reconsider "would set a bad precedent" and "provide no finality to the litigation." *Id.* at 2. And most importantly, he concluded that the evidence would not change his ruling. *Id.* at 2–4. The nighttime video was taken months after the traffic stop when conditions might have been different and "would do nothing to capture the visual capabilities of the officers

themselves." *Id.* at 2–3.  And he had already considered various possibilities about who wrote the warning issued to Simon and how that would impact whether the stop was prolonged.  *Id.* at 3–4.  Additional evidence about who wrote the ticket would not change his ruling.  *Id.*

Simon then pleaded guilty to the felon-in-possession charge, Feb. 14, 2018 Min. Entry, but reserved the right to appeal the denials of the motion to suppress and motion to supplement and reconsider, *see* Not. Conditional Plea, ECF No. 28.

## II.    Sentencing

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of Simon's sentencing hearing.  *See* PSR, ECF No. 34.  USPO indicated that Simon was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on having three prior convictions for violent felonies or serious drug offenses.  *Id.* ¶ 21.  Thus, it listed his offense level as 33 and his total offense level as 30 after accounting for acceptance of responsibility.  *Id.* ¶¶ 21–24.  USPO listed his criminal history category as V.  *Id.* ¶ 35.  Simon's Sentencing Guidelines range would have been 151 to 188 months, but because he faced a mandatory minimum fifteen-year (180-month) term of imprisonment, his Guidelines range became 180 to 188 months.  *Id.* ¶ 65.

Simon objected to his categorization as an armed career criminal, arguing that a prior conviction for attempted armed robbery was not a violent felony under the ACCA because "[t]he elements of . . . attempted armed robbery do not require an act of violence."  PSR 20.  The Government responded that the Seventh Circuit had previously held that "[w]hen a substantive offense would be a violent felony under [the ACCA] and similar statutes, an attempt to commit that offense also is a violent felony."  *Id.* (first alteration in original) (quoting *Hill v. United States*, 877 F.3d 616, 719–20 (7th Cir. 2017)).  At the sentencing hearing held on June 29, 2018,

4

Pollock reiterated the objection but noted that she "recognize[d] the status of the law and that the Court d[id] not have the discretion to change that at th[e] time" so she was "merely reserv[ing] that for appeal."  Sentencing Hr'g Tr. 5:17–20, ECF No. 48.  Accordingly, Judge Bruce overruled the objection and adopted the PSR and its findings.  *Id.* at 6:9–15.

The Government recommended that Simon be sentenced to the statutory minimum sentence of 180 months of imprisonment and five years of supervised release.  *Id.* at 7:16–19.  Simon did not "disagree with the imposition of the mandatory minimum term of imprisonment" but requested only three years of supervised release.  *Id.* at 8:11–15.  Judge Bruce sentenced Simon to his requested sentence—180 months of imprisonment and three years of supervised release.  *Id.* at 11:15–22.

### III.    Appeal

Simon appealed.  Not. Appeal, ECF No. 40.  He made five arguments on appeal: 1) that Judge Bruce "should have recused himself because before he was a judge he supervised a prior prosecution of Simon"; 2) that "the judge should have suppressed the gun because the officers lacked probable cause to initiate the traffic stop and because they prolonged the stop to allow for the dog sniff"; 3) that "the dog's alert was false and the dog was unreliable because he was improperly trained"; 4) that "the judge should have allowed him to supplement the evidence after denial of suppression"; and 5) that his attempted armed robbery conviction should not have counted as a predicate for the ACCA enhancement.  *United States v. Simon*, 937 F.3d 820, 824, 836 (7th Cir. 2019).  On August 21, 2019, the Seventh Circuit affirmed Simon's conviction and sentence, finding that Judge Bruce "committed no reversible error."  *Id.* at 824.

With respect to recusal, the Seventh Circuit held that Judge Bruce did not err by failing to recuse because Simon's prior case did not "directly give rise to or underly the present case" and

Simon was not attempting a collateral attack against the prior conviction.  *Id.* at 827–28

("Simon's 2011 conviction was not, and could not have been, the linchpin to his defense in this

subsequent case.").  It held that "there was no need for Judge Bruce to recuse himself" on that

basis.  *Id.* at 828.

With respect to the suppression ruling, the Seventh Circuit found that Judge Bruce

committed no clear error when ruling on the credibility of the police officers and, accordingly,

affirmed "the decision that probable cause justified starting the stop."  *Id.* at 828–31.  Moreover,

it saw "no reason to reverse the judge's conclusions that the officers were in the process of

completing the traffic warning when [the canine] arrived, and the officers did not improperly

prolong the traffic stop to allow the sniff to occur."  *Id.* at 831–33.  Additionally, the Seventh

Circuit denied Simon's arguments regarding the reliability of the canine and his alert.  First, it

concluded that the canine did alert on the car and that the fact that no drugs were found in the car

did not negate probable cause.  *Id.* at 834.  Next, it held that failure to follow Illinois law with

respect to training police dogs does not negate probable cause because "Illinois law does not

control the Fourth Amendment."  *Id.*  And finally, it held that Judge Bruce conducted a proper

inquiry into the canine's training and certification.  *Id.* at 835.

With respect to supplementation of the record, the Seventh Circuit held that Judge Bruce

"did not abuse his discretion."  *Id.* at 836.

Finally, with respect to his eligibility for armed career criminal status, the Seventh Circuit

noted that its precedent "foreclose[d] [Simon's] argument" but that Simon "want[ed] to preserve

it for the Supreme Court."  *Id.*

Simon filed a petition for a writ of certiorari to the Supreme Court, which was denied on

January 13, 2020.  *See Simon v. United States*, 140 S. Ct. 824 (Jan. 13, 2020) (mem.).

IV.     **Section 2255 Motion**

Simon's case was reassigned to this Court while his appeal was pending.  *See* May 14, 2019 Text Order.  In March 2020, he filed the Pro Se 2255 Motion.  He argued that Judge Bruce violated his due process rights and 28 U.S.C. § 455(a) by failing to recuse from his case.  Pro Se 2255 Mot. 4;[1] Mem. Supp. 1, ECF No. 60-1.  These claims are based on *ex parte* communications Judge Bruce had with the USAO which came to light in 2018.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).  He also argued that Pollock provided ineffective assistance of counsel both with respect to the motion to suppress and by failing to raise a claim based on Judge Bruce's *ex parte* communications on appeal.  Pro Se 2255 Mot. 4; Mem. Supp. 3–5.

The Court appointed counsel to represent Simon.  *See* Mar. 30, 2020 Text Order. Counsel filed the Counseled 2255 Motion, which was "intended to supplement [the] *pro se* pleading" on October 5, 2020.  Counseled 2255 Mot. 1.  In the Counseled 2255 Motion, Simon reasserts his due process and § 455(a) claims based on Judge Bruce's communications with the USAO.  *See id.* at 13.  He also reasserts the claim that Pollock was ineffective for failing to raise issues surrounding Judge Bruce's communications on appeal, *see id.* at 23–25, and argues in addition that the Federal Public Defender's Office ("FPD") provided ineffective assistance of counsel with respect to obtaining tolling agreements, *id.* at 25.  Counsel then filed a motion for leave to file along with the Supplemental 2255 Motion, which raises two additional claims: first, that the ACCA enhancement was invalid; and second, that Pollock was ineffective for failing to object to Simon being deemed an armed career criminal based on his prior state court drug

---

[1] The Court uses the page numbers generated by CM/ECF as the motion is inconsistently paginated.

conviction.  Suppl. 2255 Mot. 1–2.  Because the Court had already granted Simon leave to file a

supplemental motion, Nov. 18, 2020 Text Order, the motion for leave to file is moot.

The Government submitted a comprehensive response asking the Court to deny Simon's

motions.  Resp. 1, ECF No. 88.  It argues that: Simon cannot establish a due process violation,

*id.* at 31–43; the § 455(a) claim does not warrant relief under § 2255, *id.* at 43–48; the law of the

case doctrine precludes recovery for his § 455(a) claim, *id.* at 49; he procedurally defaulted his

§ 455(a) claim, *id.* at 49–52; he procedurally defaulted his ACCA claim, *id.* at 52–62; his

ineffective assistance of counsel claim based on failing to raise Judge Bruce's communications

on appeal does not warrant relief, *id.* at 63–74; his ineffective assistance of counsel claim based

on failure to object to the ACCA enhancement does not warrant relief, *id.*; and his ineffective

assistance of counsel claim based on tolling agreements is meritless, *id.* at 63 n.16.

No reply was filed, but Simon, through counsel, filed the motion for leave to file a second

supplemental motion to raise a claim under *United States v. Taylor*, 142 S. Ct. 2015 (2022).

Mot. Leave File Second Suppl. Mot. ¶¶ 10–12.  Counsel later indicated, however, that Simon "no

longer desires to file a Supplemental Petition to assert" a *Taylor* claim.  Status Report 1, ECF

No. 98.  Thus, the Court considers the motion for leave to file withdrawn.  Simon has also filed

*pro se* and counseled motions regarding the status of his motion.  In light of this Order, the Court

finds those motions moot.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the

sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C.

§ 2255(a)).

## II.   Analysis

### A.  Due Process

Simon's due process claim is based on *ex parte* communications between Judge Bruce

and the USAO that became public in August 2018, while his appeal was pending. These

communications have been detailed and summarized elsewhere. *See Shannon v. United States*,

39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S.*

*Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019),

http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-

90067.pdf). Simon argues that these communications demonstrate that Judge Bruce was actually

biased against him, resulting in violation of his due process rights. Counseled 2255 Mot. 13–16.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias

against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at

883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be

proved by evidence of the judge's actual bias or by showing that "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.*

(quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  Simon relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case.  *See* Counseled 2255 Mot. 15–16.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due

10

process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Simon points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See, e.g.*, Counseled 2255 Mot. 14–16. The Court thus finds that Simon has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

### B. Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Simon argues in the alternative to his due process claim that Judge Bruce's *ex parte* communications show an appearance of bias that required Judge Bruce to recuse himself under § 455(a). *See, e.g.*, Counseled 2255 Mot. 13. The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Simon's case under § 455(a).[2] Instead, it argues that this statutory claim is barred by the law of the case doctrine, was procedurally defaulted, and is not cognizable. Resp. 43–52.

If a claim was resolved on appeal, "that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (alteration in original) (quotation marks omitted) (applying the law of the case doctrine to bar consideration on a motion under 28 U.S.C. § 2255 of a claim decided on direct appeal). The

---

[2] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

Government argues that because Simon raised a § 455(a) claim on appeal and it was denied by the Seventh Circuit, the § 455(a) claim raised in his § 2255 motions is barred by the law of the case doctrine. *See* Resp. 49. It acknowledges that his new § 455(a) claim is based on Judge Bruce's communications with the USAO whereas his prior claim was based on Judge Bruce's potential involvement in a past prosecution of Simon but argues the communications "were both known at the time of his appeal and have nothing to do with his case." *Id.* It provides no case law support for this argument, and the argument appears to be related to procedural default and the merits of Simon's claim as opposed to the law of the case doctrine. The Court declines to find that the law of the case doctrine bars this claim.

The Government also argues that "to the extent [the new § 455(a) claim] is classified as a separate claim it is . . . procedurally defaulted because [Simon] did not rely on the emails as part of his claim on appeal." *Id.* at 51. "A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). The *ex parte* communications became public while Simon's appeal was ongoing, so he could have raised a § 455(a) claim based on them in his appeal. He failed to do so, which he acknowledges. Counseled 2255 Mot. 23. His § 455(a) claim, then, is procedurally defaulted.

Procedural default can be excused "if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted" or on a showing of "cause and prejudice for the default." *McCoy*, 815 F.3d at 295. The Government argues that Simon "cannot offer any cause for not having asserted" this claim on appeal, Resp. 52, but fails to acknowledge that Simon argues his counsel was ineffective for failing to raise the claim on appeal and that a showing of ineffective assistance of counsel can overcome procedural default, *see* Counseled

12

2255 Mot. 24–25.  Ineffective assistance of counsel can establish cause for procedural default. *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994).  However, if Simon can establish that his counsel was ineffective for failing to raise this issue on appeal, then the Court can simply grant him his requested relief for that claim without needing to also consider whether it could grant the same relief for the § 455(a) claim.  In other words, Simon's § 455(a) claim and his ineffective assistance of counsel claim based on failure to raise the § 455(a) claim on appeal collapse into one inquiry.  The Court finds that the § 455(a) claim is therefore moot, and it will consider the § 455(a) arguments along with the accompanying ineffective assistance of counsel claim.

### C.  ACCA Claim

Under the ACCA, "a person who violates section 922(g) . . . and has three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).  Simon was sentenced as an armed career criminal based on three prior convictions: a conviction for attempted armed robbery in Macon County, Illinois; a conviction for possession of a controlled substance with intent to deliver in Macon County, Illinois; and a conviction for possession of five or more grams of cocaine base with intent to distribute in the United States District Court for the Central District of Illinois.  PSR ¶ 21.  At sentencing and on appeal, Simon argued that he was not eligible for an ACCA enhancement because his attempted armed robbery conviction was not a violent felony.  *See supra* Background §§ II, III.  Now, he argues that his Illinois conviction for possession of a controlled substance with intent to deliver is not a serious drug offense and therefore he was not eligible for an ACCA enhancement.  *See* Suppl. 2255 Mot. 2.

The Government argues that this claim is procedurally defaulted because he failed to raise it before the district court or on appeal.  Resp. 52–54.  Simon does not address whether the claim is procedurally defaulted, *see* Suppl. 2255 Mot. 3 ("The government might claim the first ground stated above is procedural [sic] defaulted.  Petitioner does not concede that argument."). The record shows that Simon did not raise this claim on appeal or at the district court, so the Court finds that it is procedurally defaulted.  Simon also does not argue that he has cause for the procedural default (though he also argues that his attorney was ineffective for failing to raise the argument), so the Court does not consider whether he can show cause and prejudice.

The only argument Simon makes is that he can overcome any procedural default because the sentence "is a complete miscarriage of justice" as it "exceeds the appropriate statutory maximum."  *Id.*  (He does not elaborate but must mean that if he was not eligible for an ACCA enhancement, his statutory maximum sentence would have been 120 months, whereas he was sentenced to 180 months.  *See* 18 U.S.C. § 924(a)(2) (effective Oct. 6, 2006 to Dec. 20, 2018) (providing a ten-year statutory maximum for knowing violations of § 922(g)).  But, as the Government notes, Resp. 57–60, "the miscarriage-of-justice exception to procedural default . . . . require[s] a showing of actual innocence," *Jones v. Calloway*, 842 F.3d 454, 459 (7th Cir. 2016). Simon cites to *Narvaez v. United States*, 674 F.3d 621, 627–29 (7th Cir. 2011), for the proposition that a sentence exceeding the statutory maximum is a complete miscarriage of justice, *see* Suppl. 2255 Mot. 3, but that case deals with a different miscarriage of justice standard: the standard for determining whether a nonconstitutional error is cognizable on § 2255 review, *Narvaez*, 674 F.3d at 627–28.  As Simon fails to show that he can overcome his procedural default, the Court denies his ACCA claim (though, of course, it will address his claim

14

that counsel was ineffective for failing to argue that he was not eligible for an ACCA

enhancement based on his state drug conviction).

### D. Ineffective Assistance of Counsel

#### 1. Legal Standard

The Sixth Amendment guarantees criminal defendants the right to the effective assistance

of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the

two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a

petitioner to show that his counsel's performance "fell below an objective standard of

reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a

strong presumption that decisions by counsel fall within a wide range of reasonable trial

strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks

omitted). The petitioner "must rebut this presumption by proving that his attorney's

representation was unreasonable under prevailing professional norms and that the challenged

action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To

demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.

#### 2. Analysis

##### a. Tolling Agreements

In the Counseled 2255 Motion, Simon argues that the FPD provided ineffective

assistance of counsel by failing to secure tolling agreements allowing him to bring claims based

on Judge Bruce's bias on § 2255 review. Counseled 2255 Mot. 25. The Government argues that

this "claim is inapplicable . . . and has no merit" because Simon's § 2255 claims are timely and

15

because "the FPD could not force the U.S. Attorney's Office to agree to anything." Resp. 63 n.16.

This claim fails on many levels. It is true that Simon's claims are timely, so he has suffered no prejudice from the alleged failure to get tolling agreements. But more importantly, Simon had no right to counsel beyond his direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Any deficient performance in obtaining tolling agreements for postconviction review could not constitute a Sixth Amendment violation.

### b. District Court Suppression Motion

In his Pro Se 2255 Motion, Simon argued that Pollock was ineffective in litigating the suppression motion because she failed to make an on scene video "at a time that [Simon] had requested that would have guaranteed it being admitted" and because she failed to "recall the officers to the stand after the discovery of the citations to prove they were lying and their whole testimony could be impeached." Mem. Supp. 4. The Government does not address these claims. Nevertheless, the Court finds Simon fails to meet either prong of the *Strickland* test.

For his first argument, Simon is presumably referring to the video that was the subject of the motion to supplement the record. One reason Judge Bruce denied the motion to supplement was that the video could have been made prior to and presented at the hearing on the motion to suppress. Jan. 29, 2018 Order 1–2. Simon appears to be arguing that he asked counsel to make the video at some point in time prior to the hearing or the ruling on the motion to suppress. But he fails to allege crucial details, like when he asked counsel to make the video, from which the Court could analyze the deficiency of her performance. *See* Rule 2(b)(2), Rules Governing

Section 2255 Proceedings (requiring a motion under 28 U.S.C. § 2255 to "state the facts supporting each ground"); *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (noting that to be granted a hearing on a claim, "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions" (quotation marks omitted)).  Regardless, Simon shows no prejudice from this alleged failure.  Judge Bruce noted that even if he considered the video counsel submitted after the suppression ruling, his ruling would not change.  Jan. 29, 2018 Order 2.  This Court cannot conclude based on the facts before it that there is a reasonable probability that a video submitted earlier would change the suppression ruling.  Any video taken after the night of the arrest would not necessarily show the same conditions as that night, might not show the vantage point of the officers, and would not necessarily undermine the officers' belief about whether Simon failed to signal within the required distance.

The Court finds the second argument even more lacking.  Simon claims in a conclusory manner that Pollock should have recalled the officers to the stand "after the discovery of the citations to prove they were lying."  Mem. Supp. 4.  Presumably, he is referring to the handwriting samples Pollock wanted to use to supplement the record.  But again, Judge Bruce determined that even if he considered the evidence, his ruling would not have changed.  Jan. 29, 2018 Order 3–4.  The Court cannot conclude based on the record before it, and the paucity of allegations from Simon, that there is a reasonable probability that anything would have changed had Pollock confronted the officers with the other citations.

### c.    Raising Judge Bruce's Communications on Appeal

Simon argues that Pollock was ineffective for failing to raise on appeal a claim that Judge Bruce violated § 455(a) by failing to recuse himself from the case based on his communications

with the USAO.  *See, e.g.*, Counseled 2255 Mot. 2, 25.  A similar argument that Judge Bruce

violated § 455(a) by failing to disqualify himself from a defendant's sentencing was raised

before the Seventh Circuit while Simon's appeal was pending.  *See* Def.-Appellant's Opening

Br., *United States v. Atwood*, No. 18-2113 (7th Cir. Jan. 17, 2019) (Doc. 18).  Ultimately the

Seventh Circuit found that Judge Bruce violated § 455(a) and the error was not harmless and

vacated the defendant's sentence just a few months after Simon's appeal was decided.  *See*

*Atwood*, 941 F.3d at 886.  Simon argues that his counsel should have likewise raised the issue on

his appeal since the emails came to light while his appeal was pending, and that the argument

would have been successful because his case is similar to the defendant's case in *Atwood*.  *See*

Counseled 2255 Mot. 17–22, 24–25.  The Government argues that "[i]t is disingenuous to

suggest, with the distorting effect of hindsight, that counsel should have relied on the *ex parte*

emails instead of the recusal argument petitioner chose to raise."  Resp. 67.  Moreover, the

Government suggests that Pollock made a strategic choice to not raise an appearance of bias

claim based on the *ex parte* communications.  *Id.* at 69–71.  It also argues that "[t]here is no

reasonable probability that anything would have been different if [Simon] raised the emails as

part of his recusal claim on appeal," so Simon "cannot establish any prejudice."  *Id.* at 74.

Although "[t]he right to appellate counsel is . . . firmly established," *Gray v. Greer*, 800

F.2d 644, 646 (7th Cir. 1986), "[e]ffective advocacy does not require the appellate attorney to

raise every non-frivolous issue under the sun," *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir.

1996).  But if appellate counsel fails "to raise a significant and obvious issue, the failure c[an] be

viewed as deficient performance."  *Gray*, 800 F.2d at 646.  "Generally, only when ignored issues

are clearly stronger than those presented, will the presumption of effective assistance of counsel

be overcome."  *Id.*  Prejudice is shown if "there is a reasonable probability that [the] case would

18

have been remanded" for further proceedings or the lower court decision would have been modified in some way. *See Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000); *see also Vang v. United States*, 17-cv-902-wmc, 16-cr-059-wmc, 2021 WL 6134572, at *6 (W.D. Wis. Dec. 29, 2011) ("[C]ourts evaluate appellate counsel's performance based on the appealable issues available and permit counsel to make strategic choices, including asking whether there is a reasonable probability that raising the issue(s) would have affected the outcome of the appeal.").

The Court finds it unnecessary to address deficient performance because it concludes Simon cannot show prejudice from Pollock's failure to raise the *ex parte* communications on appeal. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").  In this case, the prejudice inquiry is whether the Seventh Circuit would have vacated Simon's conviction or sentence and remanded for new proceedings had Pollock raised a claim that Judge Bruce violated § 455(a) by failing to recuse himself based on his communications with the USAO.  The Seventh Circuit's opinions in *Atwood*, *Williams*, and *United States v. Orr*, 969 F.3d 732 (7th Cir. 2020), guide the Court's analysis.

Even though the claim would have been raised for the first time on appeal, the Seventh Circuit would have considered the claim *de novo* because the communications were disclosed after Simon was sentenced.  *See Atwood*, 941 F.3d at 885.  And because the Government conceded that Judge Bruce's impartiality might reasonably have been questioned in light of his communications with the USAO in *Atwood*, *see id.*, which was proceeding at the same time as Simon's case on appeal, it is reasonably probable they would have done so in Simon's case as well.  Indeed, the Government does not specifically argue in response to Simon's § 2255 motion that Judge Bruce did not violate § 455(a).  As such, it is reasonably probable that Simon could

have established that Judge Bruce violated § 455(a).  The Seventh Circuit would have then considered whether the § 455(a) violation was harmless error by looking to three factors: "(1) the risk of injustice to the parties in this case, (2) the risk of injustice to parties in future cases, and (3) the risk of undermining public confidence in the judicial process."  *Id.* (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

The Seventh Circuit likely would have found that the first factor weighed against vacating Simon's conviction and sentence.  Whether Judge Bruce made close discretionary rulings is relevant to this factor.  *See Atwood*, 941 F.3d at 885 (noting that the discretion a judge has in sentencing "invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes"); *Orr*, 969 F.3d at 739–41 (determining that Judge Bruce made two close discretionary calls and that "[b]ecause of the[se] discretionary calls . . . , it is possible the district court's personal biases influenced the outcome in this case").  Simon suggests that Judge Bruce made three discretionary rulings: denying the motion to recuse, denying the motion to suppress, and finding that Simon was an armed career criminal at sentencing.  *See* Counseled 2255 Mot. 21.  All three of these issues were raised in Simon's appeal, and the Seventh Circuit upheld each ruling.

The sentencing decision is clearly non-discretionary and creates no risk of unfairness to Simon.  As Simon recognized at the sentencing hearing, Seventh Circuit precedent foreclosed his argument that his attempted armed robbery conviction was not a predicate offense for an ACCA enhancement (and he raised no other objections to the ACCA enhancement at that time).  *See supra* Background § II.  This ruling was summarily affirmed by the Seventh Circuit as contrary to precedent.  *Simon*, 937 F.3d at 836.  And Judge Bruce sentenced Simon to the lowest term of imprisonment he could possibly have sentenced him to with the ACCA enhancement and to the

20

term of supervised release Simon requested.  *See supra* Background § II.  Likewise, the recusal decision was not a discretionary ruling and creates no risk of unfairness.  The Seventh Circuit reviewed this decision *de novo* and found that "there was no need for Judge Bruce to recuse himself" on the basis raised by Simon.  *Simon*, 937 F.3d at 827–28.

The suppression ruling is a more difficult question, but the Court finds that it was not the type of close discretionary call contemplated by *Orr*.  In *Orr*, the Seventh Circuit upheld Judge Bruce's denial of the defendant's motion to suppress and then found that that decision was not a close discretionary call.  *Orr*, 969 F.3d at 736–39.  It explained that "[g]iven the manifest facts and applicable law, [the defendant's] appeal of the district court's suppression ruling fails to present a colorable claim" and that "[b]ecause no reasonable district court would have reached a different result, the suppression ruling . . . required little discretion."  *Id.* at 739.  In *Orr*, the suppression question was whether a search warrant affidavit that relied on information provided by confidential source provided probable cause for issuing a warrant, and the standard of review was *de novo*.  *Id.* at 735, 736–38.

In this case, the suppression ruling relied more heavily on Judge Bruce's credibility determinations, so the Seventh Circuit primarily applied a clear error standard of review.  *See Simon*, 937 F.3d at 828–29.[3]  But the Seventh Circuit addressed each credibility finding in detail and found that Judge Bruce committed no reversible error.  *See id.* at 829–35.  That the Seventh Circuit has already affirmed this ruling after close review suggests to the Court that there is not a "tangible risk of unfairness" to Simon if the Seventh Circuit "upheld his conviction," *Orr*, 969 F.3d at 741—it already did (albeit without the added consideration of Judge Bruce's communications).  The cost to the Government of vacating Simon's conviction, letting him

---

[3] The standard of review for the arguments about the reliability of the canine alert is somewhat unclear.  *Simon*, 937 F.3d at 833–35.  Some of Simon's arguments seemed to be denied as a matter of law.  *Id.* at 834–35.

withdraw his guilty plea, relitigating the suppression issue, and potentially going forward with a trial is, in contrast, potentially quite high, so the risk of injustice to the Government is significant. *Cf. Williams*, 949 F.3d at 1065 (noting that the costs of a retrial "pose a significant risk of injustice" to the government).

How the Seventh Circuit would have addressed the second factor—the risk of injustice to parties in future cases—is less clear. In *Atwood*, the court addressed this factor only briefly, finding that it weighed in favor of granting the defendant relief because "enforcing § 455(a) in this case may prevent a substantive injustice in some future case . . . by encouraging judges to exercise caution in their communications." *Atwood*, 941 F.3d at 885 (quotation marks omitted). In *Williams*, however, the Seventh Circuit found that this factor weighed against granting the defendant his requested relief because the Seventh Circuit Judicial Council publicly reprimanded Judge Bruce and ordered that he remain unassigned to matters with the USAO for a period of time and because Judge Bruce changed his practices to avoid future problems. *Williams*, 949 F.3d at 1065. The *Williams* decision does not mention the contrary finding in *Atwood*. *Id.* In *Orr*, the Seventh Circuit found the second factor weighed against granting the defendant relief because "no reason [wa]s provided as to why the *Williams* decision was erroneous on th[at] point," though it did acknowledge the contrary finding in *Atwood*. *Orr*, 969 F.3d at 741. In light of these unexplained conflicting holdings, the Court cannot guess how the Seventh Circuit would have weighed this factor for Simon.

The Seventh Circuit likely would have found that the third *Liljeberg* factor—the risk of harm to the public's confidence in the impartiality of the judiciary—weighed against vacating Simon's conviction and sentence. Simon pleaded guilty and was sentenced to the mandatory

22

minimum sentence.  And the Court concludes that it would not undermine public confidence to uphold Simon's conviction when it has already been affirmed by the Seventh Circuit.

The Court accordingly concludes that the Seventh Circuit would likely find the § 455(a) error harmless.  *See Williams*, 949 F.3d at 1066 (denying the defendant's request for a new trial "[b]ecause all three *Liljeberg* factors suggest[ed] that the statutory violation was harmless error").  Thus, even if the issue had been raised on appeal, there is not a reasonable probability that it would have led to Simon's conviction being vacated and his case remanded for further proceedings in front of a different judge.  As Simon can show no prejudice from the failure to raise the issue, his ineffective assistance of counsel claim fails.

### d.  ACCA Claim

Simon's last claim is that his prior conviction in Macon County for possession of cocaine with intent to deliver under 720 ILCS 570/401(c)(2) is not a "serious drug offense" for ACCA purposes, and that Pollock was ineffective for failing to raise this argument at sentencing.  Suppl. 2255 Mot. 2–3; PSR ¶ 30.[4]  This argument is based on *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), which postdates Simon's sentencing and appeal.  In *Ruth*, the Seventh Circuit held that because Illinois defines cocaine more broadly than federal law, an Illinois conviction for possessing cocaine with intent to deliver does not qualify as a predicate felony drug offense for purposes of an enhanced statutory range under 21 U.S.C. § 841.  *Ruth*, 966 F.3d at 645–50.  The Government argues that "[t]he failure to anticipate or bring about the . . . *Ruth* decision[] [is] not ineffectiveness."  Resp. 67–68.  It notes that "before *Ruth*, the Seventh Circuit had often affirmed sentences in which Illinois cocaine convictions served as ACC or § 851 predicates, and it had

---

[4] The Government frames this claim as failure to raise the issue on appeal, *see, e.g.*, Resp. 67, but the Court reads it as a claim that counsel failed to object at sentencing, *see* Suppl. 2255 Mot. 2–3 (alleging that Simon's counsel "failed to properly object" to the Sentencing Guidelines determination).

never been presented with the 'isomer' argument that prevailed in *Ruth*." *Id.* at 69–70.  It argues

that Pollock had a valid strategic reason for not raising the issue—"not advancing unavailing

arguments." *Id.* at 71.  The Government does not address whether Simon can show prejudice

with respect to this claim.

### i.  Prejudice

Simon can establish prejudice from Pollock's failure to raise this argument.  In *Ruth*, the

sentencing enhancement statute was § 841(b)(1)(C), *Ruth*, 966 F.3d at 645, but the analysis

applies to the ACCA as well.  Section 841(b)(1)(C) sets an enhanced statutory maximum

sentence of imprisonment if the defendant commits the violation "after a prior conviction for a

felony drug offense."  As relevant in *Ruth*, "felony drug offense" means "an offense that is

punishable by imprisonment for more than one year under any law of the United States or of a

State or foreign country that prohibits or restricts conduct relating to narcotic drugs."  21 U.S.C.

§ 802(44).  The Seventh Circuit indicated that whether a prior conviction qualifies as a felony

drug offense depends on "whether the prior conviction's elements necessarily entail the conduct

identified in § 802(44)." *Ruth*, 966 F.3d at 647.  To answer that question, the Seventh Circuit

compared the definitions of cocaine under federal and state law.  "[N]arcotic drugs" under

federal law includes cocaine and its optical and geometric isomers.  *Ruth*, 961 F.3d at 645–46

(citing 21 U.S.C. § 802(17)(D) and § 812, Schedule II(a)(4)).  But under Illinois law, cocaine is

defined to include optical, positional, and geometric isomers.  *Id.* at 647 (citing 720 ILCS

570/206(b)(4)).  Therefore, the Seventh Circuit concluded that "the Illinois statute is

categorically broader than the federal definition." *Id.*  In other words, the elements of an Illinois

cocaine conviction do not necessarily entail the conduct identified in § 802(44) because an

Illinois cocaine conviction could be based on conduct related to positional isomers of cocaine.

The same is true for the ACCA.  18 U.S.C. § 924(e)(1) sets a mandatory fifteen-year sentence of imprisonment for individuals who violate § 922(g) and have "three previous convictions . . . for a violent felony or a serious drug offense, or both."  As relevant here, a "serious drug offense" is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in . . . 21 U.S.C. [§] 802[]), for which a maximum term of imprisonment of ten years or more is prescribed by law."  *Id.* § 924(e)(2)(A)(ii).  "[C]ontrolled substance" is defined in 21 U.S.C. § 802 as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  21 U.S.C. § 802(6).  Thus, a serious drug offense, as relevant here, is a state law offense that criminalizes manufacturing, distributing, or possessing with intent to manufacture or distribute controlled substances included in the federal drug schedules if it has a maximum term of imprisonment of at least ten years.  Because Illinois defines cocaine more broadly than federal law, the elements of an Illinois cocaine conviction would not necessarily entail the conduct identified in § 924(e)(2)(A), and therefore an Illinois cocaine conviction cannot serve as a predicate serious drug offense under § 924(e)(2)(A).  *Cf. Ruth*, 966 F.3d at 651 (noting that if the career offender guidelines "incorporat[ed] the Controlled Substances Act's definition of controlled substance (and its schedules of enumerated substances)," an Illinois cocaine conviction could not serve as a predicate controlled substance offense for purposes of the career offender enhancement because "the Illinois statute covering positional isomers of cocaine is broader than the federal definition of cocaine").

Accordingly, Simon's Illinois cocaine conviction should not have been considered a predicate offense under the ACCA and should not have been eligible for the ACCA enhancement.  This caused prejudice to him because it made him subject to an enhanced

statutory mandatory minimum and an enhanced Sentencing Guidelines range.  His offense level

became 33 rather than 24 because of the ACCA enhancement.  *Compare* PSR ¶ 20, *with id.* ¶ 21.

Without that enhancement, his total offense level would have been 21 (after reductions for

acceptance of responsibility).  *See id.* ¶¶ 22–23.  With a criminal history category of V, *id.* ¶ 35,

his Sentencing Guidelines range for imprisonment would have been 70 to 87 months, U.S.

Sent'g Guidelines Manual Ch. 5, pt. A (U.S. Sent'g Comm'n 2016)).  Thus, it is reasonably

probable that he would have been sentenced to less time if Pollock had raised this argument.

### ii.  Deficient Performance

The trickier question is whether Simon can show that Pollock performed deficiently by

failing to raise this issue at his sentencing in June 2018.  The Court finds that an evidentiary

hearing is necessary to give Simon the opportunity to prove deficient performance.

Generally, "[t]he Sixth Amendment does not require counsel to forecast changes or

advances in the law." *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (alteration

in original) (quotation marks omitted).  But there is an exception "where the building blocks of

an argument exist and sufficiently foreshadow a change in the law such that competent counsel

would at least evaluate, and possibly present, an unprecedented position." *Neal v. United States*,

Civil No. 19-cv-1360-JPG & Criminal No. 14-cr-40076-JPG, 2021 WL 3668680, at *10 (S.D.

Ill. July 8, 2021) (citing *Bridges v. United States*, 991 F.3d 793, 798, 804 (7th Cir. 2021)).

In *Harris v. United States*, 13 F.4th 623, 626–27, 629 (7th Cir. 2021), the Seventh Circuit

considered whether the petitioner's counsel was ineffective failing to raise a *Ruth*-type argument

regarding the petitioner's prior Indiana cocaine convictions, which the parties agreed on § 2255

review were not predicate offenses for an enhanced sentence under § 841.  The petitioner was

sentenced in October 2017.  *Id.* at 626.  The Seventh Circuit held that "[a]t the time of [his]

26

sentencing, his counsel should have known about a possible categorical challenge to the predicate offenses" and that "[b]y 2017, when [the petitioner] was negotiating his guilty plea, the categorical approach was well-established." *Id.* at 629. Indeed, it noted, "one circuit court had already applied the categorical approach to the federal 'felony drug offense' definition," *id.* (citing *United States v. Ocampo-Estrada*, 873 F.3d 661, 667 (9th Cir. 2017)), and "though no cases had then adopted the view on isomers that [the Seventh Circuit had] since embraced in *Ruth* and [*United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019)—in which the Seventh Circuit held that a particular Indiana drug crime could not serve as a predicate felony drug offense in part because the Indiana statute included isomers of methamphetamine not included in the federal definition of methamphetamine—]at least one court had considered the issue before [the petitioner's] sentencing hearing." *Id.* (citing *United States v. Jimenez-Ibarra*, 695 F. App'x 767, 770–72 (5th Cir. 2017)).

Ultimately, the Seventh Circuit found that the attorney in *Harris* did not perform deficiently—even though it was unaware of whether the attorney knew about a potential challenge—because viewed from an objective perspective, counsel made a reasonable choice to pursue a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) for twenty years of imprisonment. *Id.* at 630–31. The petitioner had two prior drug convictions, meaning that he could have been subject to life imprisonment. *Id.* at 625–26. Counsel could have made the novel argument that the petitioner's convictions did not qualify as predicate offenses, but he would have risked the government withdrawing its offer to rely on only one prior conviction and agree to a twenty-year sentence. *Id.* at 630. It was an objectively reasonable choice to pursue the plea agreement rather than risk his client being sentenced to life imprisonment if the novel argument were not accepted. *Id.* at 631.

27

The Court finds that, unlike in *Harris*, more factual development is necessary here, so it orders an evidentiary hearing. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ."). Pollock likely should have been aware of a potential categorical challenge to Simon's predicate offenses in 2018. *See Harris*, 13 F.4th at 629. What is not clear is whether she did explore the claim[5] and whether she decided, as a matter of strategy, to make other arguments. *See Neal*, 2021 WL 3668680, at *11 (ordering an evidentiary hearing regarding appellate counsel's performance where it "[wa]s not clear . . . whether [she] considered the argument for [the petitioner's] case and, if she did, why she chose not to raise it in favor of the arguments she did raise").[6] As the Court cannot resolve this claim on the papers, it orders an evidentiary hearing.

## CONCLUSION

Accordingly, Defendant-Petitioner Marshon Simon's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 60, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 73, are DENIED. His Motion for Leave to File Supplement to 2255 Petition, ECF No. 82, is MOOT. The *pro se* motions to show cause, ECF Nos. 92 & 99, motion to proceed *pro se*, ECF No. 97, and counseled motion for a status conference, ECF No. 100, are MOOT in light of this Order. The motion for leave to file second supplemental motion, ECF No. 95, is WITHDRAWN. The First Supplement to Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 83, is

---

[5] The only documents relevant to this claim that the Government provided are some drafts of Simon's appellate brief and notes that Simon wrote to Pollock while she was drafting the appellate brief. *See* Resp. Exs. B & C, ECF Nos. 88-2 & 88-3. These do not suggest that Pollock considered raising this claim.
[6] The court in *Neal* denied the claim on the merits after holding an evidentiary hearing. *See Neal v. United States*, Civil No. 19-cv-1360-JPG & Criminal No. 14-cr-40076-JPG, 2023 WL 2527031, at *2–5 (S.D. Ill. Mar. 15, 2023). That further suggests to the Court that an evidentiary hearing is prudent in this case.

DENIED IN PART and set for an evidentiary hearing in part. The only remaining claim is Simon's claim that his attorney was ineffective for failing to argue that his state drug conviction was not a predicate serious drug offense for purposes of an enhancement under the Armed Career Criminal Act. The Court refers this matter to United States Magistrate Judge Jonathan Hawley for an evidentiary hearing on this claim.

Entered this 30th day of March, 2023.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE